**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 21, 2025**

# In the Court of Appeals of Georgia

A25A1194. IN RE HAYES.

PIPKIN, Judge.

Appellant Amy Hayes was summarily found in criminal contempt after she failed to timely appear when her client's case was called for trial. On appeal, Hayes argues that there was insufficient evidence to support her contempt conviction and that the superior court failed to afford her sufficient due process before holding her in contempt. Neither argument has merit, and, consequently, we affirm.

1. As we have explained before,

as with any criminal conviction, the evidence in any criminal contempt case must show that the defendant is guilty beyond a reasonable doubt. Indeed, criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. And on appeal of a criminal-contempt conviction, the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Moton v. State*, 332 Ga. App. 300, 300 (772 SE2d 393) (2015). When viewed in the appropriate light, the record shows as follows.

Appellant represented a client charged with various felonies in Haralson County, and she received notice that the matter was set "on [t]he [jury] trial calendar for the weeks beginning on September 30, 2024 and on October 7, 2024 at 9:00 a.m. in Haralson Superior Court, Buchanan, Georgia[.]" On September 30, the matter "was placed 'on-call' for trial pending resolution of other cases," but it was not tried during the first trial week; instead, Appellant and her client were instructed to re-appear on October 7. In the meantime, on October 2, Appellant filed a "Notice of Filing -- Conflicts for October 7-11, 2024," in which she explained that she had a leave of absence filed in all relevant cases -- including the instant case -- for Monday, October 7, and that, on Wednesday, October 9, if necessary, she would "report to the court of any active jury trial first and . . . request[ed] that all other matters for this day be rescheduled."

The Haralson County case was called again on October 7, "at which time [Appellant's client] did appear without counsel due to a court-approved leave of absence," and the defendant "was simply advised to stay in touch with his attorney." On October 8, 2024, at 5:21 p.m., the judicial assistant to the relevant superior court

judge sent an email to Appellant -- among others -- stating that Appellant was instructed to appear on the following day, Wednesday, October 9, at 1:30 p.m., to begin a jury trial ("the October 8 email").[1] When Appellant failed to appear at the courthouse the following day, the judicial assistant emailed Appellant at 1:17 p.m. to "get a status" because no one had "heard anything" from Appellant in response to the October 8 email. About 12 minutes later, Appellant sent the following response:

> I apologize but we did not receive that email. I am in Meriwether Superior . . . at the moment. I need to get released by this judge as soon as he pauses with his current hearing, then go back to get my files from the office and I can head that way. It will take me 45 minutes to get from Meriwether to my office and then an hour and a half to drive back out to Haralson. I'm sorry. I would have been there had I gotten the email. Again, I am so sorry!

An apologetic Appellant and a concerned judicial assistant continued to exchange emails about the situation; included in that correspondence is an email from 2:42 p.m., in which the judicial assistant advised Appellant that a jury was waiting for her arrival, as well as an email sent at 2:47, on behalf of the superior court judge, instructing Appellant to drive straight to the courthouse without stopping at her office. Appellant stopped by her office and then appeared at the courthouse at approximately 4:45 p.m.

---

[1] The October 8, 2024 email appears to be part of a thread concerning October 2024 trials.

Upon her arrival in court, the superior court told Appellant that the Court had been waiting "since 1:00"[2] and asked Appellant to "explain what ha[d] happened." Appellant responded as follows:

> Yes, your Honor. I do apologize. I did not receive an email on Monday [October 8], otherwise I would have been here. I did not know until I got the email at, what, 1:17 this afternoon. At that point, I did do my best to get here, so I do sincerely apologize, but I truly did not know.

When asked to explain not receiving the October 8 email, Appellant told the Court, "I don't have an email. I have not gone through and scoured my emails since this afternoon, since I was made aware, but I don't think that I received anything. I did not know to be here, and I certainly didn't intentionally not show up." After further discussions about the various emails -- and after apparently examining her email while speaking with the judge -- Appellant stated, "[y]our honor, it is there. I don't know how I missed it, but it is there."

In addition to hearing from Appellant, the superior court also heard statements from the two prosecutors representing the State in the matter, both of whom expressed considerable frustration with Appellant's tardiness. The judge heard that potential jurors had been openly irate while waiting for proceedings to begin and had made comments disparaging the judicial system; the judge also heard that Appellant's

---

[2] There is no dispute that Appellant was instructed to appear at 1:30 p.m.

tardiness could result in considerable expense for the county.[3] Following the brief hearing, the superior court found Appellant in contempt and imposed a fine of $750; the superior court later memorialized its ruling, and Appellant now challenges that decision on appeal.

2. Appellant first argues, in two parts, that "[t]here was insufficient evidence to support [her] contempt conviction . . . because there was no evidence that her alleged disobedience of a court was willful." We disagree.

As we have explained before,

> [c]riminal contempt involves some form of wilful disrespect toward the court; it may involve intentional disregard for or disobedience of an order or command of the court, or it may involve conduct which interferes with the court's ability to administer justice. We are mindful that a court's contempt power should be used sparingly. But we are also mindful that a court must be given room to act when faced with conduct which evinces resistance to authority and interferes with the ability of the court, in its broad institutional sense, to administer justice.

(Citations omitted.) *In re Spruell*, 227 Ga. App. 324, 325 (1) (489 SE2d 48) (1997). "We have repeatedly held that an attorney may be held in direct criminal contempt for wilfully failing to respond to the calendar call or to the call of a case for trial." (Citations omitted.) *In re Beckstrom*, 295 Ga. App. 179, 179-180 (671 SE2d 215) (2008).

---

[3] The prosecutors were concerned that the obviously disgruntled potential jurors could have tainted the broader jury pool.

(a) Appellant first asserts that her "contempt conviction must be reversed because there is insufficient evidence that she willfully disobeyed the October 8 . . . email." She says that "[t]he record is clear" that "she did not realize that she was supposed to be in court at the time in question" and "that she did not even realize the email had been sent to her until she was standing in court[.]" She also asserts that she took "reasonable measures to avoid this exact situation . . . by filing her notice of conflicts," which, she says, "is clear evidence of her good faith intention to respect the court's calendar." This argument, however, views the evidence in a light most favorable to her. When viewed in the proper light, the evidence was plainly sufficient. As explained above, there is no dispute that Appellant was aware that her client's case was on the "short list" to be tried; that she was "on-call" for her client's case to go to trial; that the superior court's judicial assistant emailed Appellant the night before the trial; that Appellant received that email; that Appellant not only failed to appear for trial but that she was hours away in another court; and that Appellant continually denied receiving the email until the tail-end of the contempt proceeding, at which point she acknowledged receiving it.

While it is unfortunate for Appellant, there is no indication that the superior court credited her testimony that she was unaware of the October 8 email until she was

standing in court. Indeed, the superior court repeatedly questioned how it could not conclude that the October 8 email -- which was sent to Appellant's known email address *and* was sent as part of an established email thread -- was properly received by Appellant, who was plainly on notice of the possibility of trial. In short, this evidence is sufficient to support a finding of contempt, as a rational fact-finder could have inferred from all the evidence that Appellant's failure to appear was willful. See *In re Spruell*, 277 Ga. App. at 325 (1).[4]

(b) Appellant also asserts that an "email from a courthouse staff member is not an 'order' [that could] give rise to a conviction for criminal contempt." However, as we have held for decades, "[c]ontempt of court has been variously defined; in its broad sense it means disregard for or disobedience of the order or *command of the court*[.]" (Citation and punctuation omitted; emphasis supplied.) *Crudup v. State*, 106 Ga. App. 833, 837 (2) (129 SE2d 183) (1962).[5] See also *In re Syvertson*, 368 Ga. App. 865, 866 (891 SE2d 424) (2023); *In re Beckstrom*, 295 Ga. App. at 179; *In re Brant*, 230 Ga. App. 283,

---

[4] Because the evidence was sufficient to warrant a contempt conviction with respect to Appellant's failure to timely appear for trial, we need not address her argument that the evidence was insufficient to support a contempt conviction with respect to her decision to stop at her office before arriving at the superior court.

[5] See also OCGA § 15-1-4 (a) (authorizing summary contempt in cases of disobedience by any officer of the court to any lawful *command* of the court).

284 (496 SE2d 321) (1998); *In re Bergin*, 178 Ga. App. 454, 455 (343 SE2d 743) (1986). While the October 8 email may have come from a judicial assistant, there can be no dispute that the correspondence was relaying a lawful command of the superior court, specifically, that Appellant was to appear with her client for a jury trial. Our decision in *In re Davis*, 265 Ga. App. 290 (593 SE2d 740) (2004), the sole authority on which Appellant relies in support of this argument, does not alter the outcome here. In that case, this Court was concerned with the sufficiency of notice to the relevant attorney rather than the means by which the superior court communicated its command. Id. at 291-292. Accordingly, this argument fails.

3. Appellant next asserts that her contempt conviction should be overturned because the superior court "failed to afford [her] full due process protections before holding her in contempt." However, for reasons explained below, Appellant's position is unavailing.

As an initial matter, we disagree with Appellant that "[t]he contempt here was indirect, such that the use of summary contempt procedures was improper." "This Court has held multiple times that arriving late to court can support a finding of direct contempt."(Footnote omitted.) *In re Ogbuehi*, 373 Ga. App. 328, 330 (908 SE2d 314) (2024) (collecting cases). See also *In re Davis*, 265 Ga. App. at 291 ("An attorney may

8

be found in direct criminal contempt for interrupting court proceedings by failing to respond to a calendar call."). Likewise, there is no merit to Appellant's contention that "[e]ven if contempt was direct, the [superior] court erred . . . by using summary contempt procedures because there was no immediate threat to the court's ability to administer justice." Again, "failing to respond to a calendar call or to the call of a case for trial disrupts court proceedings and interferes with the orderly administration of justice" and, consequently, "is a direct contempt for which the contemnor may be summarily punished." (Punctuation and citations omitted.) *In re Omole*, 258 Ga. App. 725, 726 (1) (574 SE2d 912) (2002). See also *In re Ogbuehi*, 373 Ga. App. at 330 (affirming summary contempt proceedings where attorney was late to court).

Finally, *In re Shafer*, 216 Ga. App. 725 (455 SE2d 421) (1995), does not support Appellant's position that the superior court's order was insufficient to "establish that the use of the summary contempt procedure was appropriate." In that case, the only record before this Court was the trial court's conclusory order holding the attorney in contempt. Id. at 422. In contrast, the record in this case is well developed and includes a transcript of the contempt proceedings; further, the superior court in this case entered a detailed order highlighting both Appellant's conduct and the consequences

of her tardiness on the court proceedings. Consequently, Appellant is not entitled to relief on this ground.

While not all judges may have reached the same conclusion as the superior court in this case, the evidence is nevertheless sufficient to sustain Appellant's contempt conviction; consequently, we affirm the judgment of the superior court.[6]

*Judgment affirmed. McFadden, P. J., and Hodges, J., concur.*

---

[6] This Court is grateful for the considered brief filed by the Georgia Association of Criminal Defense Lawyers as amicus curiae, but we need not delve into the application and scope of Uniform Superior Court Rule 32.1 to resolve this appeal. Here, unlike in *In re Davis*, there is no dispute that Appellant was aware that her case was set to be tried the week of October 8, that her case was on the "short list" for that week, and that she was "on call" for trial. Compare *In re Davis*, 265 Ga. App. at 292 ("We decline to adopt a holding that would allow attorneys to be held in direct criminal contempt for failing to appear when a trial court does not fulfill its duty to give proper notice to the attorney by mail, in person, *or by properly placing the attorney 'on call'* in connection with the trial calendar.") (emphasis supplied); *In re Booker*, 195 Ga. App. 561, 564 (394 SE2d 791) (1990) ("[T]he trial court was authorized to find that appellant's conduct caused the delay, in that he failed to keep in touch with either his office or the court and chose to drive to a distant location *while on call for a trial*.") (emphasis supplied). Indeed, the issue here is not whether the superior court's on-call communication was sufficient, but instead, whether Appellant was aware of that communication and disregarded it.